THOMAS WALLACE, administrator, *vs.* NEW YORK, NEW
HAVEN, AND HARTFORD RAILROAD COMPANY.

Suffolk.    November 22, 1895. — February 25, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Loss of Life — Railroad — Due Care — Negligence — Action.*

An action cannot be maintained against a railroad corporation for causing the
death of a girl thirteen years old, who is killed by being caught between two
cars of a long freight train, while attempting to pass through an opening about
six or eight feet wide between the cars, which are on tracks nearly in the usual
line of travel to the platform used by passengers, and to the station beyond on
the opposite side of the main tracks, after the forward part of the train has
begun to be backed up, no emergency being shown which would justify her in
taking any risk.

TORT, under Pub. Sts. c. 112, § 212, by the administrator of
the estate of Annie J. Wallace, for causing her death.    Trial in
the Superior Court, before *Fessenden*, J., who, at the defendant's
request, ruled that the plaintiff was not entitled to recover, and
directed the jury to return a verdict for the defendant; and the
plaintiff alleged exceptions.    The facts appear in the opinion.

The case was argued at the bar in November, 1895, and after-
wards was submitted on the briefs to all the judges.

*J. E. Cotter & R. T. Conroy*, for the plaintiff.

*J. H. Benton, Jr.*, for the defendant.

KNOWLTON, J.    We may assume in favor of the plaintiff,
without deciding, that the keeping of a post office in the passen-
ger station of the defendant by its station agent with its consent,
was a use of the building which constituted an invitation by the
defendant to all persons to come there to get or deposit mail
there, or to ascertain if there was any mail matter for them.    We
may also assume that the preparation of its tracks and grounds,
and the regular use of them made by the defendant, was
equivalent to an invitation to persons to cross where the plain-
tiff's intestate was going if they had business at the post office.
Without considering the evidence relied upon by the plaintiff to
show negligence on the part of the defendant's servants, we may

inquire whether the plaintiff has introduced any evidence that his intestate was in the exercise of due care. She was going across the defendant's grounds in a place which was used more or less for switching and making up freight trains. The evidence tended to show that many persons were accustomed to go there in passing from the westerly part of the village to the passenger station. There was also uncontradicted testimony from several witnesses that when a freight train was left standing there for a considerable time, the trainmen were accustomed to divide the train, and thus make an opening through which persons could walk in going to and from the station. The plaintiff's intestate was a girl thirteen years of age who lived near by and was familiar with the place. She started to go to the post office with two boys, one of whom had a wheelbarrow. As the three approached the defendant's grounds there was a freight train standing upon one of the tracks, with an opening in it between two cars, nearly in the usual line of travel to the shed and platform used by passengers, and to the passenger station beyond, on the opposite side of the main tracks. The length of the train was not stated by any witness, but one of the boys speaks of box cars, and says he did not see the locomotive. From the plan which was used at the trial, and from the explanation of it at the argument before us, we infer that there was a considerable distance between the opening in the train and the locomotive. The plaintiff's counsel in his brief says that the train was a long one. The boys passed through this opening between the cars, which was about six or eight feet wide; she followed, and as the forward part of the train backed up she was caught between the cars and killed. Everybody of ordinary intelligence about to pass through a narrow opening in a freight train standing in a freight-yard knows that the cars are liable to be moved, and that care must be exercised in view of that possibility. As it is established law that a passenger on a highway about to cross a railroad is bound to look and listen for approaching trains if he would exercise ordinary care, so one approaching a long train of cars in a freight-yard, through which he sees a narrow opening, cannot justify himself in passing through the opening without looking up to see whether the cars on either side are in motion. In the present case only one witness said anything in regard to the conduct of the plain-

tiff's intestate immediately before the accident. He testified that "just as the cars started she started to run." In another part of his testimony he said he could not tell whether she was running or walking, but as the cars started she came in there and was caught. There is no evidence in the case tending to contradict this testimony, and the irresistible conclusion from it is, that while the cars were in motion, and when there was a space of only six or eight feet between the two cars, she tried to pass through. It would be impossible for one in the exercise of due care to attempt this without seeing that the cars were in motion, and it was careless for one to try to pass through, knowing that they were in motion, when the opening was so narrow that he was liable to be caught. No emergency is shown which would justify her in taking any risk.

This undisputed evidence receives the strongest possible confirmation from other proved facts. Everybody knows that it is physically impossible for a long freight train to back up in such a way as to move the rear car suddenly and quickly without giving warning of what is to be expected by the previous movement of the locomotive and the cars near it.

The burden was upon the plaintiff to show that his intestate was not careless in exposing herself to danger unnecessarily, and we find no evidence in the case that tends to sustain this burden.

*Exceptions overruled.*