## CAROLINE BEAL v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY.

### No. 11,694. (62 Pac. 321.)

1. PERSONAL INJURY — *Negligence of Both Parties — Rule Stated.*
One who, with knowledge of the grossly negligent and reckless habit of another, voluntarily and unnecessarily places himself in the way of receiving injuries at his hands, is guilty of contributory negligence, and cannot excuse himself on the ground that the conduct of the other was wanton and wilful in character, unless such other had knowledge or apprehension that he was about to inflict injury and made no effort to avert it.

2. RAILROADS — *Injury to Employees — Contributory Negligence.*
A workman engaged in cleaning stock-cars standing on a railroad-track, who has knowledge of the grossly negligent and wantonly reckless habit of the railway company to bump other cars against them without warning, and who is injured by such negligent conduct while he is endeavoring to cross the track by crawling under the cars, when there was a safer way to get across, and who might have heard or seen the approach of the moving cars had he looked or listened, is guilty of contributory negligence, and a recovery cannot be had for his injuries or death unless the railway company, before bumping the cars, had knowledge or apprehension of his perilous position and made no effort to avoid injuring him.

Error from Wyandotte court of common pleas; W. G. HOLT, judge. Opinion filed October 6, 1900. Affirmed.

*C. C. Dail, H. G. Pope,* and *L. F. Bird,* for plaintiff in error.

*A. A. Hurd, W. Littlefield,* and *O. J. Wood,* for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action brought against the Atchison, Topeka & Santa Fe Railway Company by Caroline Beal, widow of Daniel Beal, to recover

damages for negligently causing her husband's death. The deceased was a workman employed with others to clean the defendant's stock-cars. The place where the death occurred was in the company's yards at Argentine, this state. At that place there are many contiguous and parallel tracks running east and west. The track farthest north was called the "alley track." Upon that track the cars to be cleaned were switched. The method of placing the cars upon this track was to run them from the Kansas City stock-yards, a few miles distant, upon the track next to and immediately south of the alley track, to a switch connection a quarter of a mile or more west of the point at which they were to be cleaned, and then to back them east upon the alley track. The cleaning was done by shoveling the refuse matter out of the north sides of the cars. In order to get into the cars to do this work, it frequently became necessary to cross from the south to the north sides of the cars as they stood upon the track. Beal undertook to make this crossing by crawling under one of the cars. At that moment another train of stock-cars, sent out for the purpose of being cleaned, was backed in from the west on the alley track. It bumped into the standing cars and ran one of them over Beal, causing his death. The jury made findings, of which the following is a full summary:

Beal, at the time he was hurt, was crossing the alley track from south to north under the cars. He did not know before undertaking to cross that the moving train of cars was about to bump into the standing train of cars, nor had any warning been given to him and his fellow workmen of the approach of the train backing in from the west. It was his habit and that of his fellow workmen to cross from one side of the alley track to the other by crawling under the cars and over and under their connecting

bumpers. The stock-cars to be cleaned were brought from the stock-yards and placed upon the alley track daily and several times a day. It was the custom to bring trains of empty stock-cars from the stock-yards every morning and at other times during the day on the tracks parallel to the alley track and, after passing the point where the deceased met his death, to back them in from the west upon the alley track ; and it was a daily occurrence for the moving trains backing in from the west to bump against the standing cars in which the men were working, and it was also a daily occurrence, while the workmen were cleaning the cars, for switch-engines to move and handle the cars in and about which the men were working. Beal knew that the standing cars upon the alley track were liable at any time to be bumped into and moved by the incoming cars or switch-engines running against them, and before his injury he had been cautioned about the danger of crawling under the standing cars. None of the duties of the men engaged in cleaning the cars required them to go under such cars in the performance of their work. The deceased could have gotten into his car from the south side without crossing over to the north side. The cars he was engaged in cleaning were provided with step-ladders by which men could climb over them from one side to the other. By stepping a few feet to the south, between the alley track and the one next to it, just before Beal started to crawl under the car, he could have seen the train backing in on the alley track, and he could also have heard the engine and cars composing the moving train. It was the custom of the defendant to move the cars in which the men were working without giving any warning signal other than ringing the bell, and it was also the custom of the defendant not to give signals to the men working about the alley track of the approach of its trains upon such track or of its intention to move the cars standing upon it. Such custom not to give warning signals had existed for several years, and Beal knew of it. There was a safer way to cross from the south side to the north

side of the train of cars on the alley track than the one undertaken by Beal. The jury, however, did not specifically state what such safer way was. Inferably, however, it was to climb the step-ladders and go over the tops of the cars, or go around the end of the train. None of the employees of the defendant in charge of the train backing in on the alley track knew that Beal was crawling under one of the standing cars. No signal or warning was given by any one of the approach of the train backing in on the alley track. The deceased was sixty-eight years old.

In addition to these findings the jury returned a verdict for the plaintiff. Upon motion of the defendant, this verdict was set aside and judgment rendered on the findings for it and against the plaintiff. The plaintiff has prosecuted error to this court. It would appear from the findings that the defendant was negligent in backing its moving cars against the standing ones around which the men were at work without the giving of any warning signals of approach. Counsel, upon oral argument, endeavored to exculpate the company by claiming that, on account of the number of trains all the time moving to and fro in the yards at Argentine, the giving of sounding signals was impracticable, because signals given by one train were liable to be mistaken by other trains for which they were not intended. No reference was made to any portion of the record justifying such exculpatory plea and therefore we cannot take it into account. Besides, the ringing of bells and sounding of whistles are not the only ways of giving warning of the approach of trains. We can conceive of no reason why the sending of a man in advance of the backing train to give warning of its approach might not have been practicable. We conclude, therefore, that the defendant was negligent, and, for the purpose of considering the claim of liability

made against it by the plaintiff, will assume, as contended by her, that it was grossly and wilfully negligent.

On the other hand, it must also be held that Beal was negligent—negligent to as great an extent as the defendant. He knew that moving cars were liable to back in upon the standing cars at any time. He knew that it was not customary to give signals or other warnings of their approach. He knew that it was therefore dangerous to crawl under the standing cars. He knew that there was a safer way to cross over from one side of the track to the other. Had he stepped a few feet to the south he could have both seen and heard the approaching train backing in on the alley track. It is impossible in reason, therefore, to say that he was not guilty of negligence directly contributing to his own death. This, in fact, is admitted by counsel for plaintiff. It is contended, however, that a plea of contributory negligence upon the part of the injured person will not lie as against a charge of gross, wanton and wilful negligence on the part of the one who inflicts the injury, and in support of this contention the following quotation is made from Judge Cooley's work on Torts, 2d ed., 810 :

"Where the conduct of the defendant is wanton and wilful, or where it indicates that degree of indifference to the rights of others which may be justly characterized as recklessness, the doctrine of contributory negligence has no place whatever, and the defendant is responsible for the injury he inflicts, irrespective of the fault which placed the plaintiff in the way of such injury."

This is a trenchant and radical statement of law, and would seem to be comprehensive of the facts of the present case and to justify the plaintiff's claim of defendant's liability. However, an examination of

the authorities cited in support of the proposition and a reading of the remainder of Judge Cooley's text on the subject materially qualify the broad terms in which the rule is stated.   In immediate connection with the above, it is further stated by Judge Cooley :

"The fact that one has carelessly put himself in a place of danger is never an excuse for another purposely or recklessly injuring him.   Even the criminal is not out of the protection of the law, and is not to be struck down with impunity by other persons.   If, therefore, the defendant discovered the negligence of the plaintiff in time, by the use of ordinary care, to prevent the injury, and did not make use of such care for the purpose, he is justly chargeable with reckless injury, and cannot rely upon the negligence of the plaintiff as a protection.   Or it may be said that in such a case the negligence of the plaintiff only put him in position of danger, and was, therefore, only the remote cause of the injury, while the subsequently intervening negligence of the defendant was the proximate cause."

It will thus be seen, and especially when examined in the light of the authorities cited, that the rule of non-liability for contributory negligence in case of injuries wantonly, wilfully or recklessly inflicted, does not apply where the injured person had, or should have had, knowledge of the grossly negligent habit or the impending reckless act of the injurer, and could have avoided their consequences by prudence and caution on his own part.   Only when an act of contributory negligence is performed without knowledge or apprehension that the reckless and wanton conduct of another will or may conjoin to produce an evil effect will the injured person be relieved from liability for the result of his own negligence.   To say that one alive to the known or probable misconduct of another may, nevertheless, expose himself to the dangers

known or liable to result from such misconduct, and yet exculpate himself from the consequences upon the ground of the other's fault, would go to the complete subversion of the whole doctrine of liability for contributory negligence. One who thus tempts fate cannot be heard to complain of the harshness of its decrees.

However, when one, although negligent himself, has no knowledge or can have no apprehension of the liability of another's negligence conjoining with his own to produce an injurious effect, but the latter has such knowledge or can have such apprehension, but wantonly and recklessly proceeds to the fatal consequence when, by diligence and caution, he might have avoided it, the former will be held guiltless and the latter liable, because in such case the proximate cause of the injury is not the former's negligence, but it is the negligence of the latter in failing to see that the former one had negligently placed himself in a position of peril. It is in respect to cases comprehensive of such a state of facts that the rule of Judge Cooley and of all the cases cited by counsel for plaintiff in error was declared. The precise subject is discussed at length in Beach on Contributory Negligence, 3d ed., section 54, *et seq.*, and in 2 Thompson on Negligence, 1155, *et seq.*, and the distinction we have drawn is pointed out and the view we have expressed illustrated and enforced.

The contention of the plaintiff that persons have a right to work at dangerous employments, and that it cannot be said as matter of law that they are negligent in doing so, and that Beal assumed no risks of the dangerous employment of cleaning out stock-cars, is apart from any question which the facts of the case raise. Admitted that the business of cleaning the cars

Beal v. Railway Co.

was dangerous; admitted, notwithstanding this fact, that Beal had the right to work at it; admitted that he assumed none of the risks of that employment except such as were necessarily incidental to it, nevertheless the risk of getting killed by crawling under the cars, as a result of the company's negligence, of which he had knowledge and against which he could have guarded, was not a risk which he did not voluntarily and unnecessarily assume.    Furthermore, the claim of plaintiff that Beal had the right to practice the dangerous habit of crawling under the cars because that was the usual and ordinary habit among his fellow workmen is untenable.    One cannot recklessly expose himself to known or probable dangers because others are in the habit of doing likewise.

The judgment of the court below is affirmed.

JOHNSTON, J. (concurring specially) : I concur in the judgment of affirmance on the theory that the injury was not wilfully and wantonly inflicted by the defendant.    If it had been done purposely and by design, it would have constituted more than negligence and become an act of aggression and violence, and contributory negligence would not avail as a defense. It is well settled "that if the ordinary negligence of the plaintiff directly or proximately contributed to his injury, he cannot recover unless the injury was intentionally and wantonly caused by the defendant."    (*U. P. Rly. Co. v. Adams*, 33 Kan. 427, 6 Pac. 529; *Tennis v. Rapid Transit Rly. Co.*, 45 id. 503, 25 Pac. 876.) The contributory negligence of the plaintiff was clearly established, and, under the circumstances of this case, it necessarily defeats a recovery.

SMITH, J., not sitting, having been of counsel.