CHARLES A. BESS *et al.* v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY.

No. 11,712.   ( 62 Pac. 996.)

62   299
66   187
66   440

62   299
172   419
74   573
74   855

1. PERSONAL INJURY— *Contributory Negligence by Infant.* In determining whether a person has been guilty of acts amounting to contributory negligence, his age is of no significance except as a mark of capacity. In an action for personal injury to an infant, it is not error for the court to take the case from the jury where it clearly appears that the child had a capacity for self-protection which it culpably omitted to use in face of danger which it knew and sufficiently appreciated.

2. ———— *Case Distinguished.* The case of *Biggs v. Wire Co.*, 60 Kan. 217, 56 Pac. 4, 44 L. R. A. 655, distinguished.

Error from Leavenworth district court; LOUIS A. MYERS, judge. Opinion filed December 8, 1900. Affirmed.

STATEMENT.

THE plaintiffs below, plaintiffs in error here, were the parents of Claude D. Bess, a minor, who, at the time of his death, was fifteen years and ten months old. Between the place of residence of the deceased and the business part of the city of Leavenworth there were situated many railroad-tracks and switches owned by the defendant company, over which they operated their engines and cars. A part of these tracks crossed Seneca street at and near its intersection with Eighth street. On or near Seneca street, about sixty feet west of its intersection with Eighth street, the railway company had put in what is called a three-throw switch. By the throwing of this switch a train operated from the west toward Eighth street might be run or diverted to any one of the three different tracks running across that street. It was shown that many persons, including the deceased,

were in the habit of walking over and along the tracks in question to get to the business part of the city. Eighth street runs north and south and Seneca street east and west, and at the time the plaintiffs' son was struck by the cars he was about ten feet from Seneca street and forty-seven feet from Eighth street, on the private ground of the company, being lot 1 of block 16 of Roelofson's subdivision to the city of Leavenworth. He had walked in an easterly direction from Tenth and Miami streets along the south side of the company's lead track. While he was so walking the employees of the railway company were engaged in switching cars west in the neighborhood of Eighth and Seneca streets to the main lead track. The cars were backed in on another of the three tracks, and again back on the main line several hundred feet west of the three-throw switch, where the train stopped, the engine being at the west end of the train. While it was stopping the boy passed it. He continued along the track eastward past the switch, which was set on a different track from the one on which he was killed. After he passed the switch the train backed east, and the switch was thrown to the track on which he was killed. Just before the train reached him, which was going at the rate of four miles per hour, he turned suddenly to cross the track on which the train was coming, was struck by the cars and killed. No whistle was blown or bell rung by those in charge of the train. At the time he started to go across the track the conductor, who was about a block away, shouted at him, but the warning came too late. He could have seen the cars backing up if he had looked.

The court below sustained a demurrer to plaintiffs' evidence, which ruling has been brought here for review.

*John T. O'Keefe, David Kelso,* and *N. E. Van Tuyl,* for plaintiffs in error.

*A. A. Hurd,* for defendant in error.

The opinion of the court was delivered by

SMITH, J. : The testimony introduced by the plaintiffs below showed that the deceased, up to the time he stepped on the track, was walking in a place of safety between what is called the main line and the track next to it.   He was familiar with the location, and had traveled over the ground adjacent to these railroad-tracks many times.   He knew that the employees of the railway company were engaged in switching freight-cars, and just before his death he had passed the very train which struck him, a short distance west of the place where he was killed.   This train, consisting of an engine and six or seven cars, was moving about, with nothing to prevent its being seen by a person walking through the yard.   Had the plaintiffs' son taken the slightest precaution, by looking or listening, to ascertain whether the train which he had passed a few minutes before was backing up, he would have escaped the injuries which resulted in his death.   He was in a place of safety up to the time of his suddenly stepping in front of the approaching cars.   It appeared in the testimony that no warnings could have availed to prevent the injury after the boy stepped on the track.

In *Railroad Co. v. Holland,* 60 Kan. 209, 56 Pac. 6, it was said :

"A person who sees a railroad-track upon which trains may pass at any time is already warned of danger, and it is the imperative duty of one about to cross the tracks of a railroad at least to look and listen for approaching trains.   If he fails to look, when by

looking he could see a coming train, and there is no excuse for such failure, he will be deemed guilty of negligence *per se* and not entitled to recover for injuries sustained in a collision with a train, although those in charge of the train failed to give any signals of its approach.'' (See, also, *Railway Co. v. Willey*, 60 Kan. 819, 58 Pac. 472; *Beal v. Railway Co.*, ante, p. 250, 62 Pac. 321.)

Counsel for plaintiffs in error contend that the question of the boy's contributory negligence should have been submitted to the jury, and ought not to have been determined by the court as a matter of law on a demurrer to the evidence. The testimony showed that the boy was bright and intelligent, strong and in good health, and that he was nearly sixteen years of age. He had lived in the neighborhood of these tracks about five years, and had observed the switching of cars back and forward in the yards. Previous to the accident he had been working for wages in a factory, and before that had clerked in a drug-store. He attended school in the winter and worked during the summer months.

A person, infant or not, is required to exercise only such capacity as he possesses. The caution required of an infant is measured by his maturity and capacity, and this is to be determined in each case by the circumstances of that case. (*Railroad Company v. Gladmon*, 15 Wall. 401, 21 L. Ed. 114.) Age is of no significance except as a mark of capacity. (*The Western and Atlantic Railroad Co. v. Young*, 81 Ga. 397, 7 S. E. 912; s. c., 12 Am. St. Rep. 320; *Thompson v. B. R. Co.*, 145 N. Y. 196, 39 N. E. 709.) In this state a minor at fifteen years of age may enter into a contract of marriage. (Gen. Stat. 1897, ch. 100, § 242; Gen. Stat. 1899, § 2168.) At the same age he may choose his own guardian. Both acts involve the ex-

ercise of discretion. If the person killed had been an adult—that is, over the age of twenty-one years—of sound mind, and possessed of all his faculties, there could be no room for doubt that the railway company would not have been responsible. The arbitrary test of age alone should not govern the court in its submission of the cause to the jury. If such rule be adopted, then in every case where contributory negligence is interposed to defeat a claim for personal injuries, all consideration of the capacity, intelligence and responsibility of the person injured is withdrawn from the court and submitted to the jury, where the person injured is under twenty-one years of age, notwithstanding he may have been close to the age of majority and as capable in all respects as an adult, and *sui juris*. (Shearm. & Red. Neg., 5th ed., § 73.)

In the case of *Merryman v. C. R. I. & P. Ry. Co.*, 85 Iowa, 634, 638, 52 N. W. 546, a boy thirteen years and one month of age was injured while jumping on a turn-table, which had been set in motion by other boys. In an action to recover for the injury, the plaintiff admitted that he knew the distance between the ends of the table and the embankment; that if his leg was caught between them it would be crushed; that if he had thought of the danger he would have avoided it, but that he did not think of it because he was having fun. The court said:

"There are numerous cases which hold that the question of negligence on the part of minors is for the jury to determine, and such is the rule where the ability of the minor to comprehend the result of his acts and the danger to which they will expose him is controverted. But this case involves no question of that kind. A little attention to his surroundings would have shown the plaintiff his danger. He fully understood what would happen to his leg if caught

between the table and the embankment, and some care on his part would have been sufficient to avoid all danger. The fact that his attention was diverted by the play in which he was engaged did not excuse his failure to exercise at least the slight degree of care which was needed for his protection. The conclusion is irresistible that the proximate cause of the accident was a want of that attention and care on his part which his knowledge and judgment required him to exercise."

Under the circumstances of this case, it would have been an evasion of responsibility for the court to submit to the jury the question whether the minor was of sufficient age and intelligence to comprehend the results of his own negligence. A man of twenty-one, possessing no more knowledge of the world, no better educated and no more active mentally or physically would have been charged, as a matter of law, with the consequences of such rashness or want of care; and no certain time of life, after the irresponsible age of tender childhood has passed, should be arbitrarily fixed to determine the limits of discretion or accountability for acts done or duties neglected. The legislative declaration that the period of minority extends in males to the age of twenty-one years was obviously not intended to make that age when reached a time when the rules of evidence become changed, or their force impaired with respect to the conduct of persons charged with contributory negligence who have lived a shorter time. It could be urged with much force that the statute which permits a male infant of the age of fifteen years to enter into and carry out a contract of marriage implies the possession of a high degree of discretion and judgment, and a manhood adequate to the responsibilities assumed. If the deceased in this case had been married, which he might lawfully have

been, that fact would not have been a determining consideration in an inquiry whether he was able to look out for himself at the time he was beset with the dangers which caused his death.

Nor can it be said that the fixing by statute of a year when majority is reached must be held decisive in all cases of the time when a person has arrived at a period of accountability for his negligent acts. Irrespective of laws which remove the minor's political disability at one age, and confer a right to marry at another, courts must look at the capacity, natural and acquired, of him whose conduct is under scrutiny, and if it clearly appears from the evidence that the child had a capacity for self-protection which it culpably omitted to use in face of a danger which it knew and sufficiently appreciated, then no question is left for the jury to pass on concerning the contributory negligence of the person charged with it. The court ought not to be required to release its grasp on the facts presented to a jury, nor be hampered in applying its intelligence to their probative force, in a case where it manifestly appears that negligence contributing to an injury which is the subject of the action proceeds from a person, though under age, who has ample capabilities to make him apprehensive of threatened harm and who, at the same time, is possessed with sufficient physical strength to avoid it. See *Wallace v. New York &c. Railroad*, 165 Mass. 236, 42 N. E. 1125; *Cleveland C. C. & St. L. Ry. Co. v. Tartt*, 12 C. C. A. 625, 64 Fed. 830; *Felton v. Aubrey*, 43 U. S. App. 278, 20 C. C. A. 436, 74 Fed. 350.

The case of *Biggs v. Wire Co.*, 60 Kan. 217, 56 Pac. 4, 44 L. R. A. 655, is cited by counsel for plaintiffs in error as decisive of the question before us. While the general language used in the syllabus of that case

20—62 KAN.

seems broad enough to cover the proposition involved here, yet the facts in the case at bar more sharply present the question of the infant's contributory negligence, and differ in many material respects from those on which the decision in the Biggs case was based. In the latter case the death of the infant was caused by a set-screw attached to a revolving shaft, the velocity of which was so great that it was said that "neither a boy of fourteen nor a man of mature years could have seen it."

The judgment of the district court will be affirmed.