[No. 1378.  Decided January 8, 1895.]

JUNE R. CAMERON, *Respondent*, v. UNION TRUNK LINE, *Appellant.*

STREET CARS—INJURY TO PASSENGER—CONTRIBUTORY NEGLI-
GENCE—DAMAGES—INSTRUCTIONS.

Where objectionable features in instructions to a jury are covered by other paragraphs stating the law clearly and correctly, the error is cured.

It is not error to charge the jury that it was the duty of defendant to have an employe at the rear end of an electric car, when the evidence in an action for damages shows that it had been the custom for the electric cars of defendant to stop for transfers from the cars of a connecting line, when signalled for that purpose, and that transferring passengers traversed the street to reach the waiting car; that the car was suddenly backed, while the conductor was on the forward end, and that plaintiff, in endeavoring to avoid the backing car, was caught between it and a wall of snow, banked up on the side of the car line, whereby she received the injuries complained of.

In such a case, when it appears that owing to a heavy snow fall, the snow had been banked up on either side of the car line to afford a passage for the cars, the act of plaintiff in walking along the track toward the car, even without looking or listening, cannot be said to be negligence on her part, because the method of transfer in vogue was a license to plaintiff to act upon the belief that the car would remain at a stand-still until she could board it.

A charge that plaintiff is entitled to recover for such pain and suffering of body, if any, as the jury may believe she had endured, "and will be likely to endure," is not prejudicial, when immediately qualified by the charge that the jury may allow "such sum as would compensate her for the impairment of her health for such time as you may believe, from the evidence, it has been and will be impaired by reason of her injuries, and in such sum as will compensate the plain-

tiff for such physical injury received by the plaintiff, and the ordinary and natural result as a consequence of the same."

*Appeal from Superior Court, King County.*

*Thompson, Edsen & Humphries,* for appellant.

*Stratton, Lewis & Gilman* and *A. D. Warner,* for respondent.

The opinion of the court was delivered by

STILES, J.—The appellant is a corporation which operates lines of street railway in the City of Seattle. One of its lines is operated by cable, along James street to Broadway, where passengers are transferred, without additional fare, to a line of electric cars running to the Walla Walla addition. The two lines are not run so as to make close connection, but when a cable car is coming up to the Broadway junction, and an electric car is leaving for Walla Walla, the custom is for the cable conductor, if he has passengers for the Walla Walla line, to signal by the ringing of a bell, and if the electric car has not gone beyond Bailey street, which is one block from the junction, it stops and waits for the cable passengers to catch up with it.

The respondent, a woman of twenty-one years, lived on the line to Walla Walla, had ridden over both lines a great many times, and was accustomed to the method of transfer stated above, when on the fifth day of February, 1893, she, with her father, took a cable car "down town" for her home. As the car she was riding in neared Broadway, an electric car was seen leaving the junction for Walla Walla, and the usual signal was given to stop it. The signal was heard and the car stopped at a point 150 or 200 feet away from the junction. At this time snow had been falling to a considerable depth, so that to operate its cars the appellant had been compelled to bank up the snow on either side of its track, from time to time, until the track represented a channel cut through banks of snow four or five feet in height. These banks were just far enough apart to permit of the passage of

the cars, and of course anyone attempting to reach a car at the point where the one in question was stopped must pass between the snow walls.   As soon as they alighted, the passengers from the cable car started to overtake the electric car, and some of them reached it before it moved and climbed aboard.   Respondent, followed closely by her father, had almost reached the car, when it was started backward toward her, which frightened her and she turned to escape.   But, encountering her father, she either fell, or he threw her, to one side, so that the car, coming upon her at that moment, she was caught between it and the snow bank, and held there until the car had nearly passed her.   She suffered no outward physical injury beyond a slight bruise, but she complains that the shock consequent upon her fright has shattered her nervous system and rendered her unfit for her employment, which was that of a teacher of music.   The electric car was one having two compartments for passengers— the forward one closed, and the rear one open.   The motorman's station was in front of the closed end of the car ; that of the conductor, when not otherwise employed, at the rear of the open end.   It was toward the open end that the passengers from the cable car approached.  It seems that there was some understanding between the conductors on the two cars that, because of the snow, the electric car would be backed up to the junction from the place where it stopped, and the conductor of the cable car says that he called to his passengers not to hurry and that the electric car would back up to the junction for them.   But the evidence on the other side is that his announcement was not heard.

On the electric car some confusion occurred.   The conductor rang one bell for the car to stop, and it stopped. Then he rang three bells, which was the signal to back from a standstill, but the motorman understood it to mean "go ahead," and he started the car ahead a few feet.   Then came another signal to stop, which was obeyed.   The conductor then went to the front end of the car and spoke to the motorman, directing him to back up, which he did at once, probably getting the car under good speed before the

conductor had time to reach his place at the rear of the car. There is the usual confusion in the evidence about these bells. Some witnesses heard them, some in one way and some in another. The respondent did not hear them at all, and even the appellant's employes disagree as to how they rang, and what bells were used, there being a gong bell and a set of electric bells. Bells or no bells, however, we think it clear that the accident would not have happened if the car had not been started backward before the conductor could reach a place on the car where he could see whether there was danger of running into the respondent. The whole transaction undoubtedly occurred in a very short space of time, for at the most it could have taken respondent scarcely a minute to walk from one car to the other.

The court gave twenty-eight instructions to the jury, covering sixteen typewritten pages, about half of them at the request of the plaintiff and half at the request of defendant. There was not a very close application of those given for the plaintiff to the issues as presented by the evidence, but the objectionable features were all covered by the requests of the defendant, which were given last, and at greater length. For example, the seventh charge was: that contributory negligence was a defense, and to avail the defendant as such, it must be established by a preponderance of the evidence. Appellant says that the language used left the jury to suppose that it must furnish the evidence of contribution, and that unless it was found to have done so this defense was not to be considered. Of course, it is the rule that if the case, whether as presented by one side or the other, shows contribution, the defense is established and is available. But the twelfth charge was: "If you find from a preponderance of the whole evidence that the plaintiff was guilty of negligence which contributed to her injury, then your verdict must be for the defendant," and no less than four or five of the succeeding charges given at request of the appellant were devoted to an elaboration of this proposition as applied to the evidence in the case.

The vice of the charge, if any, was rather in giving the same thing over and over again, in varied forms, at the request of both parties, to the almost certain danger of confusing the jury. It is next to impossible, in the case of a charge of this kind, to pick out a paragraph and pronounce it reversible error, since in so many other paragraphs the error may be said to have been cured. On the whole, we cannot say that a jury of fairly intelligent men would be likely to mistake the real issues to be submitted to them in this case.

When the court told the jury that it was the duty of the appellant to have an employe at the end of its car, it committed no error, under the circumstances. The regular progress of this car was forward, not backward ; and in the streets of a city there is even greater danger of accident from a car moving backward than forward, since the public are accustomed to avoid cars moving ahead in the ordinary way, but do not expect them to be reversed. Undoubtedly the negligence of the appellant lay in the fact that the motorman, without waiting for the conductor to return to the rear of the car, which was suddenly converted into the front, started the car back, at its ordinary speed ; and no one being there to give warning or stop the car, the respondent was taken by surprise and run down before she had time to consider any means of escape. Considering the fact that the jury had before it competent evidence of the almost universal method of transferring passengers at this point, we think it no error to hold it to be the duty of the carrier to maintain a lookout, when, upon an exceptional occasion, it proposed to back up its car, with knowledge that there were passengers to be transferred, and who were likely to proceed toward the electric car in the usual way.

For substantially the same reasons we cannot say that respondent's act in walking toward the car, even without looking or listening, was negligence on her part which should deprive her of a recovery. The question of the superior rights of street cars in the streets has no place here, because the method of transfer in vogue was a license to the respond-

ent to rely upon the belief that the car would remain where it stopped until she could catch up with it; and even if she had heard the bells which signalled for a backward movement of the car, she still would have had the right to expect that the change in direction would be accomplished with due care, some one being on the lookout that nobody was run over. Under the circumstances it was no more negligence on respondent's part for her to walk along the track toward the car, than it is for an intending passenger upon any railroad car to cross an intervening track, that being the usual method of approach.

We find no legal reason for interfering with the verdict on account of the character of the injury, or the amount of the verdict.

Complaint is made that the court permitted a recovery for such pain and suffering of the body, if any, as the jury might believe she had endured, " *and will be likely to endure.*" Damage for future suffering must be confined to such as the evidence renders it reasonably certain will result from the injury. *Curtis v. Railroad Co.*, 18 N. Y. 534 (75 Am. Dec. 258) ; *Fry v. Railway Co.*, 45 Iowa, 416. Immediately following the objectionable clause, and as an enlargement of it, the jury was told that it might allow " such sum as would compensate her for the impairment of her health for such time as you may believe, from the evidence, it has been and will be impaired by reason of her injuries, and in such sum as will compensate the plaintiff for such physical injury received by the plaintiff, and the ordinary and natural result as a consequence of the same." We think the jury could not be misled under the qualification given.

The seventh and eleventh charges requested by appellant were given in substance in other charges requested by it, so far as they were applicable to the evidence.

Finding no uncured error, the judgment is affirmed.

DUNBAR, C. J., and SCOTT and HOYT, JJ., concur.