No. 22,905.

RALPH BELLAMY and MAUD BELLAMY, *Appellees*, v. THE KANSAS CITY RAILWAYS COMPANY, *Appellant*.

### SYLLABUS BY THE COURT.

1. STREET RAILWAY—*Negligence—Propelling Street Car Backwards—No Watchman at Rear End of Car—Injury to Child.* Negligence of a street-railway company may be established by evidence that its employees propelled its street car backwards on a public street where children were accustomed to be, when the motorman was operating the car from its other end, and the conductor had alighted from the car, and when there was no one on the lookout at the end of the car in the direction in which it was moving.

2. SAME—*Negligence—Personal Injury—Contributory Negligence by Infants.* Infants of tender years are not presumed to have discretion, and are not, as a matter of law, held amenable to the disabling effects of contributory negligence. The question whether a seven-year-old child has sufficient capacity and discretion to render it guilty of contributory negligence is for the consideration of a jury.

3. PLEADINGS — *Amendment to Petition — Judicial Discretion.* The propriety of permitting a plaintiff to amend his petition in an action for negligence is within the sound discretion of the trial court.

4. STREET RAILWAYS—*Negligence—Moving Car Backward—No Watchman at Rear of Car—Personal Injury to Infant Child.* Where it is shown that children were permitted and accustomed to climb upon the outside of a street car and cling to and ride upon the coupling bar and elsewhere on the outside of the car while the car was making a backward movement on a Y switch, and while the motorman was operating the car from the other end of it and the conductor had alighted from the car, and when there was no one in front to watch that the children should not be injured, there is evidence of negligence for which the street-car company may be liable if one of the children, too young to be guilty of contributory negligence, is injured thereby.

5. SAME—*Instructions—Contributory Negligence of Infant.* The instructions touching the negligence of the defendant, and the degree of capacity and discretion required of a seven-year-old child to exempt

it from contributory negligence, examined, and held to be free from prejudicial error against the defendant.

6. SAME—*Findings—Consistent with Verdict.* The findings of fact examined, and held not to be inconsistent with the general verdict.

Appeal from Wyandotte district court, division No. 1; ED-WARD L. FISCHER, judge. Opinion filed April 9, 1921. Affirmed.

O. L. *Miller*, E. S. *McAnany*, M. L. *Alden*, T. M. *Van Cleave*, and C. C. *Glandon*, all of Kansas City, for the appellant.

J. E. *McFadden*, and O. Q. *Clafflin*, *jr.*, both of Kansas City, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action by parents for the death of their seven-year-old son who was run over by a street car, causing injuries from which he died.

The accident happened while the car was being backed on a Y track. The child climbed upon a drawbar projecting behind the car. The conductor had alighted or was about to alight on the other side of the car to turn the switch and did not see the lad. Neither did the motorman, who was at the front end of the car, operating it in a backward direction. The child slipped from his dangerous position, fell under the wheels, and was crushed.

In one of the suburban or residence districts of Kansas City the defendant operates its car line on a street running north and south, called Thirteenth street. Crossing it at right angles, east and west, is Central avenue. About a block south of Central is a schoolhouse. The defendant's street car comes down Thirteenth from the north, turns around the corner on Central to the west, then backs to the eastward on Central across Thirteenth, and then heads around the corner and is ready for a return journey northward on Thirteenth. It was shown in evidence that children released from school were accustomed to climb on the street car and ride on it while it was being backed over the Y switch, although there was also testimony that when the conductor saw the children "stealing rides" or "hopping on the car," he "always asked them to get off and warned them to stay away."

The jury returned a general verdict for plaintiff, and answered some special questions:

"1. Was Algeson Bellamy at the time of his injury a bright, intelligent boy, of the age of seven years, and more than ordinary intelligence for his age? Answer: Yes.

"2. Did Algeson Bellamy, prior to the accident, understand that a person crossing over, going upon or near street railway tracks was liable to injury unless he successfully avoided moving cars? Answer: Yes.

"3. What was Algeson Bellamy doing or attempting to do just prior to the injury? Answer: Attempting to climb on car.

"4. What, if anything, induced the said Algeson Bellamy to place himself in a position of danger, if he did, just prior to the injury? Answer: His desire to ride, and the practice of other children riding around the Y, and the position of the drawbar.

"5. State whether or not Algeson Bellamy, just prior to the injury, stopped and looked for cars passing along the track? Answer: There is no evidence to show that Algeson Bellamy did stop.

"6. Could Algeson Bellamy see the street car backing toward him at the time and just before the injury? Answer: Yes.

"7. Did Algeson Bellamy know the way and manner in which these Fifth street cars were operated and switched at the place of the accident? Answer: We do not know.

"8. State whether or not the employees of the defendant in charge of this street car at the time of the injury knew that Algeson Bellamy was upon or near the tracks of the defendant? Answer: No.

"9. State whether or not the employees of the defendant in charge of the street car at the time of the injury had reason to know or believe that Algeson Bellamy was upon or near the tracks of the defendant? Answer: No, but had reasons to believe that children might be there.

"10. State where the conductor of this street car was and what he was doing at the time of the injury. Answer: Standing on the ground at the east switch, waiting for the car to pass.

"11. If, in answer to question 10, you state that the conductor was on the ground, then state upon which side of the street car he was, the north or south? Answer: On the north side.

"12. From which side of Central Avenue did Algeson Bellamy approach this street car? Answer: From the south side.

"13. Was it the wheels on the south side of the street car or the north side which passed over Algeson Bellamy? Answer: South side."

Judgment was entered accordingly, and defendant presents various errors.

The first contention is that defendant's request for an instructed verdict should have been granted. This depends upon two questions, whether there was evidence of negligence in the way the defendant was operating its car, and whether contributory negligence may be imputed to a seven-year-old boy. As

to the defendant's negligence, we think that point was established. Neither the motorman who was backing the car towards the east while stationed at the west end of it, nor the conductor who had alighted on the north side to turn the switch could see the child come from the south and climb on the car. The car was of the pattern which could be operated from either end. Either the motorman should have gone to the east end to operate it while propelling it in that direction, so that he could see that children thereabout would not be injured, or the conductor should have remained on the car at its east end and kept such a lookout. In *Cameron v. Union Trunk Line*, 10 Wash. 507, a woman who had alighted from one street car was walking on the track between snow banks to board another, and the latter car started back toward her, and in seeking to escape the woman fell and was injured. The conductor had left the rear platform to speak to the motorman, directing him to back up, which order the motorman obeyed without giving the conductor time to return to his place at the rear of the car. The supreme court said:

"When the court told the jury that it was the duty of the appellant to have an employee at the end of its car, it committed no error, under the circumstances. . . . Undoubtedly the negligence of the appellant lay in the fact that the motorman, without waiting for the conductor to return to the rear of the car, which was suddenly converted into the front, started the car back, at its ordinary speed; and no one being there to give warning or stop the car, the respondent was taken by surprise and run down before she had time to consider any means of escape. . . . We think it no error to hold it to be the duty of the carrier to maintain a lookout, when, upon an exceptional occasion, it proposed to back up its car, with knowledge that there were passengers to be transferred, and who were likely to proceed toward the electric car in the usual way." (p. 511.)

Nor can it be laid down dogmatically that the act of this seven-year-old child in his attempting to climb on the car and ride was contributory negligence as that term is applied and used with reference to the acts of persons of mature years, nor even as applied to boys of 12 to 16 years of age in the Kansas cases cited by appellant. No matter how bright and intelligent this seven-year-old boy was, he was only a child, with natural childish instincts to do as other children, perhaps his elders, were accustomed to do, and had done many times, on defendant's cars while they were being backed around this switch.

Infants of such tender years are not presumed to have discretion and are not, as a matter of law, held amenable to the disabling effects of contributory negligence.

In *Pratt Coal & Iron Co. v. Brawley,* 83 Ala. 371, 3 A. S. R. 751, where a father sued for injuries to his seven-year-old child, it was said:

"If the plaintiff is of such tender years that he is conclusively presumed incapable of judgment and discretion, and of owing a duty to another, neither contributory negligence on his part nor that of his parent can be set up to defeat a recovery. *Gov. Street R. R. v. Hanlon,* 53 Ala. 70. A child . . . seven . . . years of age is *prima facie* incapable of exercising judgment and discretion, but evidence may be received to show capacity. If capacity be shown, the general rule of contributory negligence is applicable. . . . The proof shows that the child was a few months over seven years of age, but there was no evidence tending to show the requisite capacity. In such case, the presumption of incapacity prevails." (p. 374.)

In *Railroad Company v. Gladmon,* 82 U. S. 401, 21 L. Ed. 114, 116, the action was for damages against a street-car company for injuries to a seven-year-old child, and the question of the child's contributory negligence was involved. The court said:

"The rule of law in regard to the negligence of an adult and the rule in regard to that of an infant of tender years is quite different. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. If he fails to give it, his injury is the result of his own folly, and cannot be visited upon another. Of an infant of tender years less discretion is required, and the degree depends upon his age and knowledge. Of a child of three years of age less caution would be required than of one of seven; and of a child of seven less than of one of twelve or fifteen. The caution required is according to the maturity and capacity of the child, and this is to be determined in each case by the circumstances of that case." (p. 408.)

(See, also, Rose's Notes in 21 L. Ed. 946.)

In *Bess v. Railway Co.,* 62 Kan. 299, 302, 62 Pac. 996, it was said:

"A person, infant or not, is required to exercise only such capacity as he possesses. The caution required of an infant is measured by his maturity and capacity, and this is to be determined in each case by the circumstances of that case. (*Railroad Company v. Gladmon,* 15 Wall. 401, 21 L. Ed. 114.) Age is of no significance except as a mark of capacity."

In 20 R. C. L. 127, it is said: ·

"It is generally said that as a matter of law children under the age of seven years cannot be guilty of contributory negligence. For example, a four-year-old child is held to be incapable of contributory negligence which will prevent its recovery for injury to it by a vehicle while it is playing in the street. Between the ages of seven and fourteen children may or may not be guilty of contributory negligence, depending upon their mental development and other circumstances, the presumption being that incapacity continues during this period. With respect to children of fourteen and over the presumption is that they have capacity and understanding sufficient to constitute contributory negligence, but the question is held to be one for the jury's determination in this case, as well as in the case of children under fourteen and over seven."

(See, also, *Reed v. The City of Madison*, 83 Wis. 171, 17 L. R. A. 733; Note in 25 L. R. A. 784, 786; 29 Cyc. 535-540.) ·

It follows that a directed verdict was properly denied.

Defendant's next proposition is that the trial court erred in permitting the plaintiffs to amend their petition. That was a matter within the sound discretion of the trial court. (*Bank v. Badders*, 96 Kan. 533, 536, 152 Pac. 651.) The plaintiffs had no eyewitnesses to the death of their son. Their petition was originally drawn on the theory that the child was struck while crossing the street; and it was only when, with commendable fairness, the defendant produced an eyewitness to the accident, that the precise facts came to light. It was therefore proper to permit the petition to be amended.

Under this same assignment of error the defendant discusses and complains of the instructions, urging that they laid the case open to the application of the ordinary doctrine of attractive nuisances. A street car, as such, is not an attractive nuisance like a railroad turntable which is only used occasionally and about which workmen are not always employed. It is important that the people have street-car service, and in some respects a street-car company owes no higher duty to trespassers than a regular railroad company (*Garcia v. Railway Co.*, 100 Kan. 259, 164 Pac. 272; *Carson v. Railway Co.*, 103 Kan. 138, 172 Pac. 1000), but here we have to consider the concrete facts of this particular case, and the instructions pertaining thereto. Many of the facts were developed by witnesses produced by defendant. One of these testified:

"I have seen many people out on these tracks and crossing these streets when the cars are switching backwards and forwards. I have seen chil-

dren riding on these cars as they were being switched, quite frequently before the accident, but not so much afterwards. I have seen them riding on the south side of the cars, frequently, and have seen them riding on the front step with the motorman. I had noticed that for some three weeks before this accident. . . . I have seen children from Prescott school hopping these cars as they switched back. They got onto these cars on the south side. They were using '700' cars at that time. There is not an entrance on both sides of the '700' cars. There is a step at the front end of the left-hand side and steps at the back on the right-hand side. A car in backing up from the west to the east, of the '700' type, there would be no steps at the rear of that car on the back on the south side. The back fender of this car was up as the car was backing. I never saw Buster [Algeson Bellamy] riding those cars. I saw him around there in the evenings when other school children were riding the cars. They rode them in the evenings as well as at noon time."

Another of defendant's witnesses testified:

"Well, I was standing at my window watching the 11:30 [a. m.] children come up the hill from school. These two little youngsters were in the lead, and this one little boy who met with the accident was in front. And just as he got even with Central avenue he turned and said to the other little boy, 'hurry up, here comes one.' And at that time the 13th street car was backing down Central avenue, and the little fellow ran and put his foot on the coupling pin, I suppose it is, and his hand on the fender—the fender that was turned up in the rear. The one hand holding to the fender, and I don't know what he was holding to with the other hand, but something about the street car, and I saw the child's foot slip and he went right under the car. And just as the wheel struck the boy I turned. I heard the little lad scream—the one that was back of him—'Oh, you are running over him, you are running over him.' And that was all I saw, until afterwards—I saw him lying on the sidewalk.

"Q. I see. Now, then, in order, maybe, that the jury may understand a little better—you spoke about this holding to a fender, or something. Can you describe to the jury how that fender was, whether it was up or down, and how it was fastened? A. Why, it was standing upright, turned up at the end of the car and fastened with a chain, and this coupling pin—I suppose it is a coupling rod, or something, sticking out there toward this side . . .

"The coupling rod, I suppose, is used to fasten two cars together. It is a long flat piece of iron, and has a sort of a knob on the end of it and has a hole through it where the pin goes down through it. I think it is held up under the car, resting on a cross piece. It was not sticking out directly to the south but at an angle. The end described as being larger than the rest was farther south than the other end of it. When the little boy put his foot on that the iron did not slip with him but his foot slipped. The iron didn't move, that I saw. I am not positive, but I don't think that it did. I had frequently seen children riding these cars as they were being backed up."

These facts necessitated the submission of the case to a jury under proper instructions. The jury was instructed, in part, thus:

"13. A boy of the age of the deceased, Algeson Bellamy, cannot be held to the same degree of care and prudence as a person of mature years; but he is bound to exercise such care and prudence as a boy of reasonable intelligence, caution and judgment of the same age would be expected to exercise under the circumstances disclosed by the evidence; and a failure on the part of the deceased to exercise such care and prudence would constitute negligence upon his part.

"14. If you find from the preponderance of the evidence that at the time and place, and substantially in the manner alleged in plaintiffs' petition, their said son, Algeson Bellamy, was run over and killed, and further find from the preponderance of the evidence that the defendant's servants or agents or any of them were guilty of negligence as hereinbefore defined, substantially as stated in any one or more of the particulars of negligence hereinbefore set out, which was the proximate cause of the injury and death of plaintiff's said son, you will find for the plaintiff, unless you further find from the preponderance of the evidence that the plaintiffs' said son was also guilty of negligence which directly contributed as a proximate cause to his injury and death, in which event you will find for the defendant, notwithstanding any negligence on its part.

"16. Even though you may find from the evidence that Algeson Bellamy was riding or attempting to ride on the car of the defendant at the time and place in question, and while so doing he fell and was run over by said car, yet if you further find from the evidence that the defendant, through its agents, servants or employees or any of them, knew that children were in the habit of riding its cars at said place while they were being switched, without objection, or that they permitted such children including said Algeson Bellamy, to ride on said cars by those operating them, then and in that event such children, including said Algeson Bellamy, could not be treated as trespassers on such cars, but the defendant's servants and agents were bound to exercise ordinary care and prudence for their safety, and if, under such circumstances, they failed to exercise such care and prudence, it constitutes negligence on the part of the defendant. However, if you find from the evidence that said Algeson Bellamy, at the time of his injury, was riding or attempting to ride on the defendant's car without the express or implied consent of the defendant, its servants or agents as hereinbefore stated, then and in such event he was a mere trespasser on said car, and the defendant's servants owed him no duty except to refrain from willfully or wantonly injuring him; and if he was injured under such circumstances, the plaintiffs cannot recover herein unless it is proven by the preponderance of the evidence that his injury and death were willfully or wantonly caused by the defendant's servants or agents or any of them.

"17. If you find from the evidence that plaintiff's said son was injured and killed as a result of a mere accident, that is, an unforeseen oc-

currence against which ordinary care and prudence on the part of the defendant's servants and agents could not have guarded, you will find for the defendant."

Although the situation and circumstances were perhaps slightly akin to those of an attractive nuisance, the instructions were properly confined to the pertinent facts in evidence, and no error is apparent therein.

The court did not instruct nor did the jury find that the projection of the drawbar was negligence. The drawbar was merely a footstep, probably the most convenient one, for the children to mount and ride.

Neither can it be said that the jury's special findings are inconsistent with the general verdict, nor that the defendant was entitled to judgment thereon. While the jury found that the boy was more than ordinarily intelligent, and knew that he was liable to injury unless he avoided moving cars, these findings do not demonstrate that he knew and appreciated the danger of doing what other youngsters were accustomed to do. His unusual intelligence and knowledge were only such as compared with the ordinary capacity of seven-year-olds, not with that of boys of twelve to sixteen years such as this court has held amenable, in law, to the disabling effects of their own contributory negligence in Kansas cases relied on by defendant.

After a painstaking consideration of this case in all its aspects, and a diligent examination of the points earnestly urged by counsel for defendant, the court is unable to discover a plain palpable error which would permit us to disturb this judgment, and the judgment is therefore affirmed.