No. 32,584

Mary Ellen Mitchell, a Minor, by R. C. Mitchell, her Father and Next Friend, *Appellee*, v. Owen Foran and Salina Firestone Service Stores Company, *Appellants*.

Opinion filed January 25, 1936.

Z. C. Millikin, W. C. Millikin, C. W. Burch, B. I. Litowich, LaRue Royce, L. E. Clevenger and E. S. Hampton, all of Salina, for the appellants.

W. S. Norris, Roy A. Smith and Homer B. Jenkins, all of Salina, for the appellee.

The opinion of the court was delivered by

Dawson, J.: This was an action for damages for injuries sustained by plaintiff when she struck her leg on an awning hook on the sill of the front window of a business building in Salina.

Defendant Foran owned the building, and his codefendant, the Salina Firestone Service Stores Company, was the tenant.

The *locus in quo* was as follows: Fifth street in Salina runs north and south. On its east side is a cement sidewalk twelve feet four inches wide. Facing westward on that street is a two-story brick building fifty feet wide. It has two storerooms on the ground floor, and two apartments on the second floor. Access to the apartments

is by a stairway from the street front and between the two store-rooms.

Each storeroom has plate-glass windows, divided by a recessed entrance to its doorway. The building sets back from the sidewalk about six inches. This six-inch space is covered by cement, and makes a slight ledge about 1½ inches above the level of the side-walk. The sills of these plate-glass windows are about a foot above this slight ledge, and are made of wood. These sills project outward 3¾ inches from the plate glass, but are not flush with the sidewalk, there being a margin of 4¼ inches of clearance between them.

The windows are equipped with canvas awnings which are ma-nipulated by ropes. Small metal plates having prongs or hooks are screwed on the wooden window sills and are used as fastenings for the awning ropes. One of these hooks was screwed on the bottom window sill of the south storeroom, about 13½ inches above the level of the sidewalk.

Defendant Foran erected this building in 1916. The work was done by a competent contractor and the building was in good repair at the time of the occurrence which gave rise to this lawsuit. Foran's codefendant has been the tenant of the south storeroom for some years, and has used it for storage and supplies, not for retail trade. Its front door was usually kept locked. Goods for storage and for retail supplies were carried in and out by an entrance at the rear of the building.

On March 1, 1934, plaintiff, who was then nine years old, resided with her parents in one of the upstairs apartments of the above-described building. About 5 o'clock in the afternoon plaintiff and three other children, accompanied by plaintiff's mother, descended the stairway, all five of them joined hands, and with the mother in the center, they started southward on the sidewalk. Plaintiff was on the extreme left of the quintette, next to the east side of the side-walk. In some way which she could not describe her leg caught on one of the prongs of the metal plate on the window sill and severely wounded her just below the knee. Her mother released her and she was given temporary treatment and hospital services and atten-tion later. Infection caused complications which kept her out of school for a time and retarded her progress in school for a year.

This action was begun to recover damages. Plaintiff charged de-fendants as landlord and tenant with negligence in various par-ticulars.

The defendant, Salina Firestone Service Stores Company, answered with a general denial, admitted its tenancy of the south room on the ground floor; alleged that its occupancy was for warehouse purposes exclusively, that it kept the front door locked and used a rear door for carrying merchandise into and out of the building, and that the front of the building was in the same condition on March 1, 1934, as it had been during all the time of the tenancy. It also alleged that it placed no awning hooks on the building, that any such hooks were not used by it, and it did not know of their existence, and that the building was not out of repair, and—

"Neither the front of said building, nor any attachments thereto, extended to or over the sidewalk in front of said building, and if the plaintiff, Mary Ellen Mitchell, sustained any injury at the time and place alleged in her petition, on account of coming in contact with any device attached to said building, such injury did not result while in the usual and ordinary use of said building, sidewalk or device; but such injury, if any was sustained, resulted from the negligence, carelessness and want of care on the part of the said Mary Ellen Mitchell.

. . . . . . . . . . . .

"Wherefore, this answering defendant prays that the plaintiff take nothing in this action, and that it have its costs in this behalf expended; but if the plaintiff is awarded any damages against this answering defendant, this defendant prays that it may have judgment against the defendant, Owen Foran, for a sum equal to that awarded against it."

Defendant Foran's answer consisted of a general denial; admitted he was the owner of the building but was not in the occupation or control of it at the time of the accident; that neither the device claimed to have caused the injury, nor the building itself, extended to or over the sidewalk. He alleged that if plaintiff suffered any injury it did not result while she was in the usual and ordinary use of the sidewalk, but that such injury, if any, resulted from negligence, recklessness and want of care on the part of Mary Ellen Mitchell, and if she came in contact with the awning hook she did so while acting as a trespasser, and brought injury upon herself, and not by any reason, fault or want of care on the part of defendant; and that if she did not speedily and permanently recover from the injury it resulted from want of timely and adequate care.

The cause was tried before a jury, which returned a verdict for $900 against both defendants, and answered special questions thus:

"1. When the awning hooks were placed on defendant's building were such devices commonly and generally used as a part of awning equipment? . A. Yes, but not in the position or location used in this case.

"2. How long had the awning hook, claimed to have caused the injury, been upon defendant's building at the place it existed on March 1, 1934? A. According to evidence submitted, approximately 17 or 18 years.

"3. Prior to the date of this accident would an ordinarily prudent person in defendant's position, as owner or occupant of the building, have had reason to apprehend that the presence of the awning hook on the building, of which plaintiff complains, would likely cause injury to a person coming upon the premises or using the sidewalk in the exercise of ordinary care for his or her safety? A. Yes.

"4. How wide was the sidewalk at the time and place of the accident? A. Approximately 12 feet 4 inches, according to evidence.

"5. Did the awning hook, claimed to have caused the injury, extend to or over the sidewalk? A. No.

.    .    .    .    .    .    .    .    .    .    .    .    .

"8. Was the front of the Foran building out of repair on March 1, 1934? A. According to evidence it was not.

"9. Did Mary Ellen Mitchell know where the awning hooks were located for a long time prior to March 1, 1934? A. Yes.

"10. Would Mary Ellen Mitchell by the use of such care as a child of her age ordinarily uses have passed in front of the Foran building on any part of the sidewalk without striking or injuring her leg upon the awning hooks on the front of the building? A. Ordinarily yes—except when crowded to east edge of walk.

.    .    .    .    .    .    .    .    .    .    .    .    .

"12. If you find the defendant, Owen Foran, was guilty of any negligence state specifically what acts constituted such negligence. A. By permitting the awning hook to be placed upon his building in the position and location it was placed and remaining there until the time of the accident on March 1, 1934.

"13. If you find the defendant, the Salina Firestone Stores Company, was guilty of any negligence, state specifically what acts constituted such negligence. A. As a tenant of the building to permit the awning hooks to remain on the building in the position and location in which they were placed."

Judgment was entered on the verdict. Both defendants appeal, making common cause against the judgment. They also present a legal question on which they differ and which will require our attention if none of the errors they both urge against the judgment is sustained.

Defendants first contend that no actionable negligence was established. There was, indeed, no testimony that the placing of the awning device on the window sill so close to the sidewalk was an improper place for it or a negligent placing and maintaining of the thing; but we cannot agree that the trial court and jury had no basis for their finding of negligence, No. 12. The basis of that finding inheres in the facts which it recites—facts which were never in dispute. True, the finding is a conclusion, but it is one the jury had

a right to make. The jury had been taken to view the building and were shown the spot where the awning hook which wounded the plaintiff had been affixed. And while there was testimony that the awning hook had been fastened to the building in conformity with good building practice at the time it was erected, this court cannot say that the question whether the awning hook was in a proper location was one on which only experts were entitled to testify. The question was obviously so simple that any juror could perceive, without oral testimony, the mischievous possibilities likely to result from the placing of the awning hook so close to the ground and so close to the sidewalk where people might collide with it. In *King v. King*, 79 Kan. 584, 100 Pac. 503, this court said:

"A mechanical device may, of course, be so simple that any person of ordinary intelligence can judge of its effect in actual operation as well as a trained machinist." (p. 586.)

The mere fact that the awning hook had not theretofore injured a pedestrian did not disprove negligence. In *Osage City v. Larkin*, 40 Kan. 206, 19 Pac. 658, it was held that where a nine-year-old child carrying a sack of fuel was thrown and injured by a tumbling rod of a hay press which projected into an alley, the fact that the tumbling rod had been thus situated for years did not exempt the owner nor the city for the consequences of negligence inherent in the circumstances. In *Fischer v. City of St. Louis*, 189 Mo. 567, 576, 88 S. W. 82, 107 A. S. R. 380, the action was for damages for injuries sustained by plaintiff in falling over a millstone which had long been permitted to remain on a sidewalk. There was ample room for pedestrians on the sidewalk between the millstone and the street curb. Plaintiff, an elderly washerwoman, was familiar with the presence of the millstone and passed it a dozen times a day. In holding that the case was one for a jury to decide, the supreme court said:

"The long period of time that this condition of things was allowed to exist does not tend to render it sacred in the eyes of the law, for an original sin of negligence will not ride into the wilderness on a scapegoat of mere time, and it must not be lost sight of that to pedestrians the mere fact that a condition has existed for a long time is of no significance, except it speaks to the point of notice and knowledge which necessarily varies as to each one."

While in the last two cases the thing which caused the injury projected into the traveled way, yet the same rule of law has been applied where the defects causing injuries to passers-by were out-

side but near the traveled way. Thus, in *Bank v. Bennett*, 100 Kan. 90, 163 Pac. 625, it was held:

"One who creates a pitfall or excavation so near a public highway as to endanger persons lawfully using the highway is liable for an injury sustained by one who without fault falls therein while attempting to follow the highway." (Syl. ¶ 2.)

In *Durst v. Wareham*, 132 Kan. 785, 297 Pac. 675, a rickety shed was situated beside an alley, one corner post of the shed being thirty-six inches outside the alley line. The motorcycle on which plaintiff was riding in the alley skidded into the corner post and knocked it down. This accident caused the shed roof to fall and injure the plaintiff. In affirming a judgment against the owner of the shed, this court said:

"It is the duty of the owner of land adjacent to or abutting upon a highway to so construct and maintain the structures on his land as not to endanger the safety of travelers using the highway in a lawful manner." (Syl. ¶ 1.)

In *Chickering v. Thompson*, 76 N. H. 311, 82 Atl. 839, the owner of a vacant lot on which a stake protruded close to the sidewalk was held liable to plaintiff who tripped on the stake while using the walk.

In *Athens Electric Light & Power Co. v. Tanner*, (Tex. Civ. App.) 225 S. W. 421, an electric-power company maintained an unguarded guy wire close to a highway. A horse, on which plaintiff was riding, got astride of the guy wire and became frightened, and plaintiff was unseated and broke his arm. Judgment imposing liability on the power company was affirmed, and among pertinent paragraphs of the headnotes, one which accurately summarizes the text of the opinion reads:

"What distance in measurement from a public road a dangerous place must be in order not to be in close proximity with the road to free a person from responsibility for the place, and also from responsibility for injuries therein to a traveler, is a question for the jury to determine under the facts." (Headnote 9.)

In the case under review the awning hook was 4¼ inches from the east edge of the sidewalk and 13½ inches above the level of the sidewalk, where the slightest deviation consciously or unconsciously taken by a pedestrian was likely to cause him to brush against it and snag himself exactly as happened to this plaintiff. And the fact that this nine-year-old plaintiff knew of the existence and situation of the awning hook did not deprive her of her right of re-

covery as a matter of law. In *Chickering v. Thompson,* supra, the New Hampshire supreme court said:

"If it is conceded that the plaintiff knew Wells [defendant's tenant] was maintaining the stake, it cannot be said as matter of law that she is in fault merely because she forgot about it. Neither can it be said it conclusively appears that she is in fault because she failed to see the stake in time to avoid coming in contact with it; . . ." (p. 313.)

See, also, *Devine v. Heckman,* 121 Kan. 22, 245 Pac. 1037, and citations.

Defendants next complain of the jury's findings. Touching No. 1, they contend there was no evidence to support the jury's qualification of their affirmative response. Neither was there any evidence to show that the position and location of the awning hook which injured the plaintiff was a proper place to attach it to the building. But there was ample evidence that the jury had a clear understanding of the factual situation, and they were also given an ocular inspection of it (R. S. 60-2910), and thus the jury's qualified response was justified. In *Waterworks v. Brown,* 6 Kan. App. 725, 50 Pac. 966, it was said:

"A jury may, in considering their verdict, take into consideration the view of the premises—when a view is permitted by the trial court—and the results of their observation, in connection with the evidence produced before them." (Syl. ¶ 1.)

To like effect were *City of Topeka v. Martineau,* 42 Kan. 387, 22 Pac. 419; and *Gartner v. Williams Oil & Gas Co.,* 125 Kan. 199, 263 Pac. 778.

Defendants moved to set aside the words which qualified the jury's affirmative response to question No. 10. Their contention is that there was no evidence that plaintiff was crowded to the east edge of the sidewalk. There was evidence that plaintiff and three other children and plaintiff's mother, with hands joined, were walking southward, and that these five persons made room for two persons to pass going northward. This happened on the sidewalk at the point where the awning hook projected from the window sill within 4¼ inches of the sidewalk. Obviously the jury's reference to crowding related to this incident, and it was not a mere imaginative invention to the jury.

Finding No. 3 is also objected to, but we think it was fairly within the issues and supported by the evidential circumstances, so far as it concerns the owner of the building, at least.

Defendants also contend that the facts and circumstances showed so clearly that plaintiff was guilty of contributory negligence that the question was resolved into one of law and not a jury question. We think not. So common are the cases where persons are injured by objects on or near a public way, on account of their momentary inattention or because their attention has been diverted to other matters than the safety of the way and its immediate environs, that even adult persons are not ordinarily denied damages for such injuries as a matter of law. Ordinarily such cases are for the jury's determination. Still more emphatic is the rule that such situations present jury questions of contributory negligence where the injured persons are children of tender years. (*Bellamy v. Railways Co.*, 108 Kan. 708, 196 Pac. 1104, and citations; *K. P. Rly. Co. v. Whipple*, 39 Kan. 531, syl. ¶ 4, 18 Pac. 730.)

Some criticism is made of the instructions, but this court discerns nothing amiss in them to warrant special discussion. The eleventh instruction told the jury that if they found that plaintiff should recover it would be proper to allow her something substantial for her injuries, for her pain and suffering, and for the inconvenience and lessening of her capacity, if any, to earn a livelihood, on account of such injury, together with her expenses for medical services, medicine and dressings, which last three items were admitted to be $159.85. The jury allowed plaintiff $900 *in toto*, which would only amount to $740.15 net. If there was no evidence to justify the inclusion of some amount for plaintiff's lessened capacity to earn a living (and the loss or hindrance of a year's schooling might justify such an item of damages), the limited amount of the verdict leaves no room for an inference that any amount was allowed for "lessened capacity." Moreover, if counsel for defendants thought such an instruction prejudiced them, they should have asked to have the aggregate amount of the general verdict itemized. Good practice justifies such procedure, and on appeal it gives this court a fair opportunity to judge how intelligently and impartially the jury has dealt with the question of damages. (*Merrick v. Missouri-K.-T. Rld. Co.*, 141 Kan. 591, 597, 42 P. 2d 950.)

The foregoing disposes of the principal objections to the judgment raised by both defendants. Next, we will consider the special point urged by the Salina Firestone Service Stores Company that it should have judgment over against its codefendant for whatever liability it

has to pay to satisfy plaintiff's judgment. A majority of this court approach this question from a somewhat different viewpoint, which, however, leads to the result for which the Firestone company contends. While, ordinarily, a landlord is not responsible for defects of a building caused by wear and tear, or when the premises get out of repair (except by special contract with his tenant), yet he is liable for structural defects (Restatement, Torts, § 379), and this awning hook, situated where it was, according to the indisputable facts, and also according to findings Nos. 2, 3, 6, 7, and 12, was a structural defect and nothing else. On the other hand, a majority of this court hold that this tenant's occupancy of a part of the Foran building as a warehouse, not as a retail establishment to which the public were invited, and where the commonly used way of ingress and egress was at the rear, did not impose on the tenant a duty to remove the awning fixture which had been attached to the front window sill for seventeen or eighteen years. Here there was no basis for the application of the rule touching the implied duty of a tenant not to permit the premises occupied by him to get out of repair, and the consequent liability imposed on him for injuries to third persons resulting from his negligence in permitting his premises to fall into disrepair. In this case that portion of defendant Foran's building rented by him from month to month to his codefendant was not in a state of disrepair. (Findings Nos. 6 and 8.)

It follows that the judgment against the defendant Foran should be affirmed, and the judgment against his codefendant, the Salina Firestone Service Stores Company, should be reversed and set aside.

It is so ordered.

HUTCHISON, J., dissenting.

DAWSON, J. (dissenting): The trial court instructed the jury thus:

"7. Every person, notwithstanding his or her age, must exercise some care for his or her own safety at all times, but the jury are instructed that the rule in law in regard to the negligence of an adult, and the rule in regard to that of a child, are quite different. By the adult there must be given that care and attention for his own protection that is ordinarily exercised by persons of intelligence and discretion. Of a child less discretion is required, and the degree depends upon the child's age and apparent knowledge, and if the jury believe from the evidence that the plaintiff was, just before and at the time of receiving her alleged injuries, exercising the care which one of her age, intelligence, capacity, discretion and experience would naturally and ordinarily be expected to exercise, then, in such event, the plaintiff is exercising all of the

care which the law requires of her, and she cannot be found guilty of contributory negligence in this case."

This instruction was the law of this case (*U. P. Rly. Co. v. Hutchinson,* 40 Kan. 51, 19 Pac. 312; *Winston v. McKnab,* 134 Kan. 75, 4 P. 2d 401).

The jury's special finding No. 9 shows that plaintiff had long been aware of the awning hook and its location. Finding No. 10 is so important as to justify its repetition here:

"10. Would Mary Ellen Mitchell by the use of such care as a child of her age ordinarily uses have passed in front of the Foran building on any part of the sidewalk without striking or injuring her leg upon the awning hooks on the front of the building? A. Ordinarily yes—except when crowded to east edge of walk."

The jury's qualification of this affirmative finding was quite beside the question, and it should have been striken out. It was sheer invention. The plaintiff's mother testified that as she and the four children started southward with joined hands on the twelve-foot-four-inch sidewalk "there was a man and woman passing on the other side of us, on the west side of us, and we made room for them." Not a syllable about crowding, or a fair inference of crowding. Plaintiff herself, after satisfying the court as to her competence as a witness, testified:

"I was walking—there was a little girl and she was holding on to mother's hand and I was holding on to her hand and I was walking. . . . There was an awning hook there and I caught my leg on that. We just walked along there and didn't see anything right at that time and then I was walking along and my leg caught on the awning hook. I seen it there before but I didn't know I was going to catch my leg on it."

"*Cross-examination:*

"Q. How does it come you got so close to the wall? A. I don't know.

"Q. How close were you to the wall of the building when you were hurt? A. I don't know.

"Q. You say you were walking slowly? A. Yes.

"Q. Were they [mother and other children] ahead of you or were you all in kind of a straight line across the walk? A. We was on a kind of a straight line.

"The Court: You could walk on the sidewalk without hitting the hook, couldn't you? . . . A. Yes.

"Q. And you had a good many times, hadn't you? A. Yes.

"Q. If you had been watching where you was going, you wouldn't have hit the hook, would you? A. I don't know.

"Q. You knew where it was, didn't you? A. Yes.

"Q. You knew the sidewalk there was plenty wide so that you could get by without hitting it, didn't you? A. Yes."

By the law of the case, by the jury's finding No. 10, without the reference to (the imaginary) crowding which should be stricken out, in the light of the testimony just read—which was all the testimony on the subject—it seems clear to me that there was no basis upon which a judgment for plaintiff could be predicated, and the jury's special finding No. 10, as corrected, compels a judgment *non obstante* in favor of defendants. Such is the mandate of the civil code (R. S. 60-2918), and it is one which this court has enforced consistently for fifty years. (*Nichols v. Weaver*, 7 Kan. 373; *Doty v. Crystal Ice & Fuel Co.*, 122 Kan. 653, 658, 253 Pac. 611, and citations; *Dye v. Rule*, 138 Kan. 808, 811, 28 P. 2d 758, and citations.)

On the question which the defendants raise between themselves, I doubt the soundness of the court's decision which exculpates the tenant while affirming the judgment against the owner of the premises; but I do not regard that point as requiring special treatment in this dissent.

WEDELL, J., joins in this dissent.

BURCH, C. J., not sitting.